IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>DANIEL ARGUETA-ESPINOZA,<br>Defendant. | CASE NO: **4:18MJ3133**<br><br>**MEMORANDUM AND ORDER** |
|---|---|

On the government's motion, the court held a detention hearing under the Bail Reform Act, 18 U.S.C. § 3142(f). For the following reasons, the court concludes the defendant will be released subject to conditions.

A presumption of detention does not apply in this case: Defendant is charged with committing the crime of identity theft in violation of 42 U.S.C. § 408.

Defendant has no criminal history. He has lived in the United States since 2012, and he has not left this country since then. He has family in both his country of citizenship, El Salvador, and in the United States. He is engaged to be married to Megan Curry, a United States citizen and the mother of Defendant's 10-month old child. Ms. Curry has agreed to be a third-party custodian if Defendant is released. Defendant and Ms. Curry would live in her mother's home.

Under the circumstances presented, I find no evidence that Defendant poses a risk of harm to the public if released. I further find that even assuming such a risk exists, it can be sufficiently ameliorated by imposing conditions of release. As to the latter issue, the undersigned magistrate judge has investigated how this court has historically viewed the risk of harm and flight posed by defendants charged with identity fraud. Based on the release/detention records for the District of Nebraska for the last 15 years, United States citizens with no prior criminal

history who are facing charges of identity theft are routinely released on conditions pending trial.[1] There is no reason to believe that the risk of harm posed by identity theft is greater when committed by an illegal alien compared to those legally present in this country.  In fact, the contrary may well be true: that is, a citizen's use of another's identity to commit fraud or steal is likely more harmful, and it may evidence a greater level of criminal thinking and intent, than Defendant Argueta-Espinoza's alleged use of another's identity (or a wholly fictitious identity) to work.

Setting aside Defendant's El Salvador citizenship and contacts in that country, his past use of a false name, and his illegal presence in the United States, the court finds Defendant poses no, or only a very minimal, risk of flight. Defendant has been in this country continuously for six years. He has a fiancé and an infant child in Nebraska who are both citizens of this country. Further, Defendant's fiancé is willing to serve as a third-party custodian who will live with the defendant and report to the court if Defendant threatens and begins to leave the country.

Therefore, the court must decide if Defendant's illegal presence in this country and ties to El Salvador warrant detention. If released, Defendant will enter ICE custody. From there, he may be deported before these criminal proceedings are compete. To ameliorate that risk, the undersigned magistrate judge entered an unorthodox order, temporarily releasing Defendant to his criminal defense counsel's custody so the defendant could attend his immigration hearing. The goal of this order was to communicate with the immigration court and obtain some

---

[1] See e.g., 8:15-cr-00043-LES-TDT, USA v. Hagemeier; 8:13-cr-00315-JFB-FG3-1 - Davis-Smith; 8:13-cr-00453-LES-FG3, USA v. Ansu; 8:13-cr-00318-JFB-FG3, USA v. Onumbu (legal permanent resident); 8:11-cr-00218-JFB-FG3; USA v. Tucker; 8:11-cr-00054-LSC-MDN, USA v. Swanson; 8:11-cr-00220-JFB-FG3, USA v. Lad; 8:08-cr-00106-LSC-TDT, USA v. Alexander; 8:06-cr-00313-JFB-FG3, USA v. Gregg; 8:05-cr-00116-LSC-TDT, USA v. M,A, Yah, Clinton Brooks, Jr, and Mark Rex; 4:03-cr-03085-RGK-DLP, USA v. Colley and Strauch.

assurance that if released by this court, ICE would not immediately deport Defendant. That effort was a waste of time. The immigration judge would not permit Defendant and his criminal defense counsel to raise the issue for discussion in that forum.[2]

So that leaves the undersigned magistrate judge to decide the core underlying question: Does a defendant's potential deportation by ICE pending the disposition of federal criminal charges pose a serious risk that the defendant "will flee" as that term is used under the Bail Reform Act? 18 U.S.C.A. § 3142 (f)(2)(A). For the reasons explained in the recent opinion of Chief Judge Leonard Strand, (United States v. Villatoro-Ventura, 2018 WL 4376983, at *1 (N.D. Iowa Sept. 12, 2018)), I find the answer is "No." Specifically, I emphasize that under existing federal regulations, ICE can delay deportation when federal criminal charges are pending. See 8 C.F.R. § 215.2 and 215.3(g). See United States v. Resendiz-Guevara, 145 F. Supp. 3d 1128, 1136 (M.D. Fla. 2015) ("In light of Section 215.3(g) and that initially there was cooperation between ICE and the U.S. Attorney's office here, the Court believes that the Government must show why it lacked the ability to prevent Defendant's departure through a stay or departure control, which it failed to do in the instant case.").

> By delivering the defendant to the United States Attorney's Office in this case, rather than simply deporting him immediately, ICE yielded to the judgment of the prosecutorial arm of the Executive Branch that

---

[2] Such dialogue and cooperation between forums is neither unique nor prohibited. Rather, it is encouraged in the interest of comity. This court has entered orders which respect and incorporate conditions of release as needed to effectuate the requirements of a state forum, and state courts have done the same with my orders. Doing so assures that Defendants facing charges in two forums do not have conflicting obligations on release, and it serves to assure that defendants remain available to attend hearings and a trial in both forums.

> the public's interest in criminally prosecuting the defendant was greater than the public's interest in swiftly deporting him.
>
> Defendant's prosecution is thus the result of both the United States Attorney's Office and ICE—two Executive Branch agencies—exercising their discretion in a coordinated effort to serve the public interest as they see it. To argue now, as the government does, that ICE's interest in deporting the defendant would suddenly trump the United States Attorney's interest in prosecuting the defendant ignores the cooperation (and exercise of discretion) that brought, the defendant before this Court in the first place. It also presumes that ICE would immediately remove a defendant retained on bond and thus frustrate his criminal prosecution, when ICE itself has found that the departure of a defendant to a pending criminal proceeding is prejudicial to the interests of the United States.

United States v. Marinez-Patino, 2011 WL 902466, at *7 (N.D. Ill. Mar. 14, 2011).

The fact that ICE will not agree or cannot be trusted to delay deportation—that separate agencies within the Executive Branch do not communicate and cooperate—cannot serve to deprive a defendant of his rights under the Eighth Amendment and the Bail Reform Act. Moreover, the testimony of Defendant's proposed third-party custodian was credible, and I conclude her custodial supervision of Defendant will sufficiently ameliorate any risk of flight that may exist. Accordingly, the government's motion to detain must be denied. See, e.g., United States v. Montoya-Vasquez, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009)("The Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him."); United States v. Tapia, 924 F. Supp. 2d 1093 (D.S.D. 2013) ("[E]vidence of an ICE detainer alone does not merit detention under the Bail Reform Act."); United States v. Jocol-Alfaro, 840 F. Supp. 2d 1116, 1117 (N.D. Iowa 2011) (holding that despite an ICE detainer, an illegal alien charged with falsely claiming U.S. citizenship and using false Social Security numbers to obtain employment was entitled to pretrial release with conditions where the defendant had family ties to the area and minimal criminal history).

Accordingly,

IT IS ORDERED:

1) The government's motion to detain is denied.

2) A hearing to review the release conditions with Defendant and effectuate his release will be held at 3:45 p.m. on September 19, 2018 before the undersigned magistrate judge in Courtroom 2, United States Courthouse and Federal Building, 100 Centennial Mall North, Lincoln, Nebraska.

3) Defendant, defense counsel, and counsel for the government shall attend.

September 19, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge